The IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff<br><br>vs.<br><br>NICOLAS A. DECOSTA,<br><br>    Defendant. | 8:21CR193<br><br>PLAINTIFF'S SENTENCING MEMORANDUM AND RESPONSE TO DEFENDANT'S OBJECTIONS TO THE PSR AND MOTION FOR VARIANCE |

  Plaintiff, United States of America, by and through the undersigned Assistant United States Attorney for the District of Nebraska, offers its sentencing memorandum in advance of the hearing scheduled for June 1, 2023, at 11:30 a.m. Plaintiff requests that the Court accept the Plea Agreement (Filing No. 89) for the reasons set forth in this Memorandum.

**A. Procedural History.**

  The Grand Jury returned an indictment naming Nicolas Decosta as a defendant on July 21, 2021. (Filing No. 13). His initial appearance and arraignment were held on August 26, 2021. (Text Minute Entry No. 27). On December 22, 2022, the Court set a change of plea hearing for Defendant which was held on January 19, 2023. (Text Minute Entry Nos. 82, 85). On the latter date, pursuant to a plea agreement (Filing No. 89), Decosta entered a guilty plea to Count I of the Indictment. A sentencing hearing is scheduled for June 1, 2023. (Filing No. 105).

  The Court adopted the Magistrate Judge's Findings and Recommendations on Plea of Guilty, found Defendant guilty, and accepted the plea on February 14, 2023. (Filing No. 97).

  Defendant objected to the draft Presentence Investigation Report (PSR) and filed a Motion for Variance on May 1, 2023. (Filing No. 114). Defendant appeared to have filed a brief supporting

1

his motion under seal, which was subsequently ordered withdrawn by the Court on Defendant's motion. (Text Order No. 121). No subsequent brief in support of the motion has been filed, under seal or otherwise, to date. Plaintiff addresses the objections to the initial PSR below.

B.  **Defendant's Objection to Adjustment for Role.**

Defendant did not provide a version of the offense for the PSR. (PSR, ¶ 46). However, he offers an alternative narrative of offense conduct through his objections to the draft PSR which are addressed by the Probation Officer in the Addendum to the Second Revised PSR. The gist of his alternative narrative is that he objects to the 2-level upward adjustment for role applied by the Probation Officer in the PSR pursuant to USSG § 3B1.1(c), claiming that he and Holdman were "equal partners and equally responsible." (Addendum to PSR, p 35).

As noted in Plaintiff's Adoption of the PSR (Filing No. 113), Plaintiff does not join Defendant's objection to the adjustment for role in the offense because it is a proper legal conclusion based upon the facts of this case and is supported by recent Eighth Circuit case law. In United States v. Werkmeister, 62 F.4th 465 (8th Cir. 2023), the district court found that Werkmeister held a supervisory role with respect to a coconspirator. The district court cited evidence that Werkmeister gave direction to Melhus about who would be making deliveries to a storage shed that Melhus rented, and that Werkmeister specified the price and quantity of methamphetamine that Melhus should provide to customers. The court also found that Melhus contacted Werkmeister on another occasion to request instructions, and that Werkmeister gave him directions on how to proceed with activities of the drug organization. "Evidence that a defendant directed the criminal activities of another coconspirator on one occasion, or that the defendant recruited a member into the conspiracy, is sufficient to support a finding of aggravating role in the

offense." Id. at 470. Therefore, Werkmeister, provides legal support for the conclusion reached by the Probation Officer in the instant case.

Here, there is evidence that Holdman and Decosta had different roles in the dark net operation. Decosta argues that their roles were equal. However, it is uncontroverted that Holdman stored the pharmaceutical drugs in his bedroom and mailed packages and that Decosta ran the dark net marketplaces. Defendant similarly characterized the relationship in his objections: "Decosta ran the sales department and Holdman ran the warehouse and the delivery." (Addendum to the PSR, p. 35). It appears that even if their business relationship was on a more equal footing as argued by Decosta, Decosta would have been positioned to provide direction to Holdman in fulfilling orders received through the dark net.

Pursuant to USSG § 5C1.2(a)(4), Defendant is disqualified for safety valve if the Court finds the 2-level upward adjustment for role applies. Plaintiff does not intend to contest subsection (4) of § 5C1.2 at the sentencing hearing, but Defendant improperly conflates the requirement to "truthfully provid[e] to the Government all information and evidence [he] has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan" as an endorsement of Defendant's personal perceptions of the division of labor among the conspirators.

C.  **Plaintiff opposes Defendant's Motion for Variance.**

There can be no doubt that the distribution of addictive pharmaceutical drugs such as oxycodone and hydrocodone has directly fueled the national opioid epidemic. Oxycodone and hydrocodone were the primary drugs distributed by Defendant and Jamal Holdman through their dark net marketplaces. More concerning, however, was law enforcement's seizure of counterfeit

3

M30 pills, which resemble legitimate oxycodone 30mg pills but, as in this case, are often found to contain fentanyl. Fentanyl is approximately 100 times more potent than morphine (also available through the defendants' "pharmacy") and 50 times more potent than heroin as a painkiller. Plaintiff unequivocally opposes a variance. However, if the Court is inclined to grant a variance, Plaintiff respectfully suggests that it should under no circumstances exceed that which was afforded codefendant Holdman. Plaintiff notes among the factors that the defendants' criminal histories differ. Also, Decosta argues only that they were equal partners, not that he was less culpable than Holdman.

**D.     Conclusion.**

If the Court determines that the upward adjustment for role applies, then the PSR as written properly calculates the applicable range (78-97 months). If the Court determines that it does not apply, Defendant's applicable range potentially drops to 51-63 months at a Total Offense Level of 23 and Criminal History Category II.[1]

Plaintiff asserts a guideline sentence is sufficient to address the § 3553(a) factors; however, if the resulting range is the former, as currently calculated by the PSR, Plaintiff will seek a sentence at the low end of the guideline. If the resulting range is the latter, Plaintiff requests a sentence at the high end of the guideline as a low-end sentence would not adequately reflect Defendant's crime and culpability.

---

[1] Pursuant to USSG §§ 2D1.1(b)(18) and 5C1.2.

            UNITED STATES OF AMERICA

            STEVEN A. RUSSELL
            United States Attorney


      By:  s/ Christopher L. Ferretti
            CHRISTOPHER L. FERRETTI
            DC Bar #985340
            Assistant U.S. Attorney
            1620 Dodge Street, Suite 1400
            Omaha, NE  68102-1506
            Tel:  (402) 661-3700
            Fax:  (402) 345-5724
            E-mail:  christopher.ferretti@usdoj.gov

### CERTIFICATE OF SERVICE

  I hereby certify that on May 19, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and by e-mail to:   Joe Howard, Counsel for Defendant. I further certify that a copy of the same has been served by e-mail to the following non-CM/ECF participants:

Jessica Curd
U.S. Probation and Pretrial Services Officer
Jessica_Curd@nep.uscourts.gov

            s/ Christopher L. Ferretti
            Assistant U.S. Attorney

5